**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**VICTOR WHITE,**

**Plaintiff,**

**v.**

**HOWARD COMMUNITY COLLEGE, *et. al.*,**

**Defendants.**

**Civil Case No. SAG-21-2274**

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Self-represented Plaintiff Victor White filed this civil action seeking damages from his employer, Howard Community College ("HCC"), and his two supervisors, Verna Bernoi and Joseph Pettiford (collectively "Defendants"). ECF 1. Defendants have filed a Motion to Dismiss the Amended Complaint for failure to state a claim. ECF 10. White filed an opposition, ECF 14, and Defendants filed a reply, ECF 15. A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, Defendants' Motion shall be granted in part and denied in part.

## I. BACKGROUND

The following facts are derived from White's Amended Complaint. ECF 5. White began working as a Grant Accountant/Compliance Officer for HCC in November, 2017. *Id.* at 7. His supervisor, Verna Bernoi, asked him to investigate whether HCC's grants and contracts were proper and legal. *Id.* White discovered some areas of concern and began working to address the issues. *Id.* However, he was then involved in an automobile accident in July, 2018. *Id.* Despite the fact that White had been teleworking one day per week before the accident, when he returned to work after the accident, he was told he could no longer telework or earn pay for missed time.

*Id.* Because he would still have to complete all of his assignments, White had to work additional hours unpaid. *Id.*

In late December, 2019 and early January, 2019, White began experiencing pain and exhaustion. *Id.* He set up an appointment with a cardiologist. *Id.* Around the same time, the FBI requested to meet with White about an investigation into HCC's financial conduct as it relates to its grants and contracts. *Id.* White set up a meeting to discuss the financial issues with the president of HCC, and HCC representatives asked White about his conversations with the FBI. *Id.* at 7-8.

In the meantime, White's supervisor, Bernoi, and the associate vice president of human resources, Pettiford, met to discuss White's leave. *Id.* at 8. Pettiford informed White that he had been treated improperly and Bernoi stated that his pay would be corrected because he was entitled to another $3,400. *Id.* White then told Pettiford and Bernoi that his doctors believed he needed a heart transplant, and he would require weekly appointments along with some other medical attention. *Id.* Pettiford told White that he could telework two days per week, but White asked for a flexible telework accommodation. *Id.* Bernoi objected to the flexible teleworking schedule. *Id.*

White contacted Social Security to ask about disability. *Id.* However, his doctors believed he could continue to work with a flexible teleworking schedule. *Id.* at 9. Bernoi denied that request, saying that she needed him in the office five days per week, though she was concerned with him "falling out and dying on campus." *Id.*

After his first surgery, White's doctors issued him a "life vest" to wear. *Id.* Shortly thereafter, the Vice President of Finance scheduled a retreat on campus. *Id.* Bernoi told White he had to attend the retreat, even though he was concerned about his unfamiliarity with the operation of the life vest. *Id.* White's doctors referred him for mental health counseling because he was under so much stress at work from these decisions. *Id.*

White spoke with Pettiford to tell him that he wanted to continue working with appropriate accommodations. *Id.* Pettiford told White that since Bernoi wanted him in the office five days a week, things would "get ugly" and he should consider resigning. *Id.* White's new direct supervisor, Nina Do, seemed supportive of his flexible teleworking schedule. *Id.* at 10. However, in a subsequent meeting with Bernoi and Pettiford, Pettiford again asked if he had discussed the issue with his counsel and said that he should resign. *Id.* Bernoi and Pettiford forced White to take short term disability as of July 19, 2019, and as of July 28, 2019, cancelled all of his HCC credentials including his emails. *Id.* They cut off short-term disability benefits as of August 21, 2019, even though he had been told they would last through November, 2019. *Id.* He applied for long term disability and began receiving it in the last week of November, 2019. *Id.* at 11. HCC terminated White's employment in August, 2020. *Id.*

White filed a complaint with the EEOC in November, 2019 and filed this lawsuit in September, 2021. *Id.*

## II. STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of

the claims and the "grounds" for entitlement to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . .") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  But a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  But, a

court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

Because White is self-represented, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), aff'd, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), aff'd 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because she is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also MD v. Sch. Bd. of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

## III. DISCUSSION

### A. Claims Specified in White's Amended Complaint

To begin, Defendants argue, and White concedes, that his claims under the ADA and Title VII are not cognizable against the two individual supervisory defendants, Joseph Pettiford and Verna Bernoi. ECF 14 at 3. The claims against those defendants, therefore, will be dismissed with prejudice.

As to the claims against HCC, Defendants argue that White's entire Amended Complaint is subject to dismissal under Fed. R. Civ. P. 10(b) because he failed to set forth his claims in separately numbered paragraphs and set forth each claim in separate counts. While those points are correct, White's Amended Complaint clearly enumerates three claims, which Defendants have identified and discussed in their motion. Accordingly, this Court declines to dismiss a *pro se* Amended Complaint for such particularities and will address White's three claims below. *See City of Shelby, Miss.*, 574 U.S. at 11 ("a basic objective of the rules is to avoid civil cases turning on technicalities" (quoting 5 C. Wright & A. Miller, § 1215, p. 172 (3d ed. 2002)).

#### i. ADA Failure to Accommodate

Defendants mount no particular argument for dismissal of this claim, which formed the basis of White's EEOC charge and is adequately pled in the Amended Complaint. White's claim for failure to provide reasonable accommodations, then, properly survives the motion to dismiss.

#### ii. Race Discrimination

In contrast to his claim for failure to accommodate, White adduces no evidence and does not allege that he ever raised a claim of race discrimination before any administrative agency. Race discrimination is not mentioned in his EEOC charge, ECF 10-2, or in the email communications he sent to the Howard County Office of Human Rights, ECF 14-2. Accordingly,

the race discrimination claim must be dismissed because White has not exhausted his administrative remedies. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).

**iii. Retaliation for Federal Investigation**

Defendants properly note that White's third claim, alleging retaliation for his participation in a federal investigation, failed to identify any statute on which it rested. In his opposition, White cites a section of the federal Whistleblower Protection Act, 41 U.S.C. § 4712, which can provide whistleblower protection in certain circumstances. ECF 14 at 5. To invoke that section, however, a party must first file a claim with the Office of Inspector General before filing suit. 41 U.S.C. §§ 4712(b) and (c)(2). White again adduces no evidence that he has done so, meaning that his present claim must also be dismissed.

**B. Claims Not Contained in Plaintiff's Amended Complaint**

In his opposition, White raises two new causes of action that are not mentioned in any fashion in his Amended Complaint. A party is not permitted to effectively amend a complaint in its motions briefing. Rather, a plaintiff is "bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint." *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997).

**i. ADA Retaliation**

In his opposition, White suggests for the first time that he is pursuing a claim of retaliation for filing his request for reasonable accommodation under the ADA. *See* ECF 14 at 4 ("The plaintiff asserts in his claim of retaliation on two fronts. 1) For participating in an [*sic*] federal investigation 2) For filling [*sic*] a request for reasonable accommodation under ADA."). That claim is clearly not contained in the Amended Complaint, which refers only to "retaliation due to

the plaintiff [*sic*] participation in an [*sic*] federal investigation." ECF 5 at 4. Because the Amended Complaint cannot be further amended in this manner, White's ADA retaliation claim will not be considered further at this stage.

**ii. Intentional Infliction of Emotional Distress**

White attempts to resuscitate his claims against the individual defendants, Bernoi and Pettiford, by suggesting that they can be liable for intentional infliction of emotional distress ("IIED") under the Maryland Tort Claims Act. That claim, also, is not contained in the Amended Complaint. It appears, though, that White will not be able to mount such a claim because it would be subject to the requirements of the Local Government Tort Claims Act ("LGTCA") which requires a plaintiff to provide notice of the claim within 180 days of the alleged tortious act. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-304(b). White stopped working at HCC in July, 2019, more than two years ago. He has not alleged that he gave timely prior notice of an IIED claim to HCC. To the extent he has not done so, his claim is now time-barred.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 10, is granted as to all claims except for White's failure to accommodate claim under the ADA against HCC. The motion is denied as to that single claim. A separate Order follows.

December 22, 2021

/s/
Stephanie A. Gallagher
United States District Judge